**FRANK C. GILMORE, ESQ. - NSB #10052**
frank@gilmoregroupnv.com
The Gilmore Law Group PLLC
3715 Lakeside Drive
Reno, Nevada 89509
Telephone:     (775) 848-6387
Facsimile:      (775) 996-9898

**ERIC C. PALOMBO ESQ.** (*admitted pro hac vice*)
EPalombo@freightlaw.net
Cohen & Palombo
The Times Building
32 Parking Plaza, Suite 402
Ardmore, Pennsylvania  19003
Telephone:  (215) 609-1110

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

EVANS DELIVERY COMPANY, INC., a
Pennsylvania Corporation,

                              Plaintiff,

            v.

ITS LOGISTICS, LLC, a Delaware limited
liability company; and ITS NATIONAL, LLC,
a Delaware limited liability company; and
DOES I-X, inclusive,

                              Defendants.

CASE NO. 3:23-cv-00533-ART-CSD

**AMENDED COMPLAINT**

        Pursuant to Federal Civil Rule 15(a)(1)(B), Evans Delivery Company, Inc. ("Evans") hereby

files this Amended Complaint against the defendants, ITS Logistics, LLC ("ITS Logistics") and ITS

National, LLC ("ITS National"; collectively with ITS Logistics, "ITS"), and avers as follows:

                                    **PARTIES**

        1.        Evans is a corporation incorporated under the laws of the Commonwealth of

1

Pennsylvania with its principal place of business in Schuylkill Haven, Pennsylvania.

2.     ITS Logistics is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Carson City, Nevada.

3.     ITS National is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Carson City, Nevada.

4.     The sole member of both ITS Logistics and ITS National is ITS Acquisitions, LLC, which is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in either Nevada or Delaware.

5.     The sole member of ITS Acquisitions, LLC, is ITS Holdings, LLC, which is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in either Nevada or Delaware.

6.     The sole member of ITS Holdings, LLC, is ITS Buyer, Inc., which is a corporation that is incorporated under the laws of the State of Delaware with its principal place of business in Delaware.

7.     Defendant "Does I-X" are the names of unidentified individuals or entities who may be responsible for the acts complained of. If or when the true identities of the liable individuals or entities are made known to Plaintiff, this Complaint may be amended pursuant to Federal Civil Rule 15.

## JURISDICTION AND VENUE

8.     Jurisdiction in this matter is based upon 28 U.S.C. 1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

9.     Venue properly lies in this judicial district pursuant to 28 U.S.C. 1391(b) because the defendants reside in this district and are subject to the Court's personal jurisdiction with respect to this action.

## PREDICATE FACTS

10.    Evans is a federally licensed interstate motor carrier.

11.    Evans seeks to collect freight charges and related accessorial charges including detention, per diem and chassis charges that are due to it for the interstate motor carrier

THE GILMORE LAW GROUP

3715 LAKESIDE DR. RENO, NV 89509 | P: 775-848-6387 | F: 775-996-9898

2

transportation services it provided for ITS.

12. ITS is a third-party logistics provider and a federally licensed property broker.

13. Beginning on or about January 2021, ITS engaged Evans to provide transportation services to and from various locations including, but not limited to, Chicago, Illinois, Jacksonville, Florida, North Kansas City, Missouri and Lebanon, Indiana.

14. In exchange for Evans providing transportation services including securing necessary equipment and incurring related costs such as per diem and chassis, ITS agreed to pay Evans for the services Evans rendered and the costs Evans incurred.

15. Upon ITS's request, Evans would travel to the facility where the shipment was located, pick up the shipment and transport it to its destination, providing any necessary equipment in the process.

16. After completing delivery, Evans would invoice ITS for the services it rendered and the costs it incurred.

17. In furtherance of the parties' relationship, in September of 2022, ITS approached Evans requesting that it enter into a Carrier-Broker Agreement, wherein ITS would engage Evans to provide transportation services and ITS would pay Evans for those services subject to the written terms of the agreement.

18. The parties then negotiated the terms of the Carrier-Broker Agreement between September 2022 and April of 2023.

19. As a result of those negotiations, an amendment was drafted in April of 2023 modifying the terms of the Carrier-Broker Agreement (the "April 2023 Amendment").

20. The parties agreed that Evans would execute ITS's Carrier-Broker Agreement containing what appeared to be ITS's standard terms using ITS's online contracting software and also execute the April 2023 Amendment, which would amend and/or modify those terms to reflect the parties' negotiations.

21. During the negotiation process, ITS represented to Evans that the parties did not have a contract in place, and ITS needed Evans to agree to a formal, master contract, which was the Carrier- Broker Agreement.

22. ITS represented to Evans that, because ITS and Evans did not have a formal contract in place, ITS would need to continue to reapprove Evans as a carrier in ITS's carrier system every 72 hours.

23. Subsequently, ITS refused to place any more freight with Evans on the basis that the parties did not have a formal, master contract in place and Evans was not certified within ITS's carrier system.

24. Evans relied upon ITS's representations that the parties did not have a formal, master carrier contract in place.

25. On April 3, 2023, Evans signed the April 2023 Amendment and provided a copy to ITS with the understanding the amendment would apply to ITS's standard form Carrier-Broker Agreement regardless of any date discrepancies between those agreements.

26. ITS represented to Evans that that the amendment had been uploaded to Evans's carrier profile and would be utilized with the form ITS Carrier-Broker Agreement, and that ITS would execute the amendment.

27. ITS then requested that Evans complete the electronic signing of ITS's Carrier-Broker Agreement, which would be utilized with the amendment, and provided Evans with a link to the agreement.

28. Evans used the link ITS provided and executed ITS's Carrier-Broker Agreement on May 16, 2023, as a result of ITS's refusal to provide any more freight with Evans, ITS's representations that the parties' did not have a formal, master contract in place, and that the April 2023 Amendment would apply to ITS's Carrier-Broker Agreement.

29. Both before and after the execution of the Carrier-Broker Agreement, Evans would render transportation services on behalf of ITS, and would invoice ITS for those services in a timely fashion.

30. However, ITS failed to timely pay the charges it incurred.

31. As a result, Evans participated in meetings with ITS regarding ITS's outstanding balance as ITS continually changed its standard operating procedures for monitoring and paying invoices.

4

32. ITS repeatedly represented to Evans that ITS was fixing its accounting process, which was broken, and it would be making payment to Evans for the services Evans rendered and the costs Evans incurred, and Evans relied upon those representations.

33. Despite its representations to the contrary, ITS failed to make payment to Evans and failed to fix its broken accounting process.

34. Despite its demand for payment, Evans has not been paid for the services it rendered to ITS or the costs it incurred in rendering those services.

### FIRST CLAIM FOR RELIEF
### (Failure to Pay Motor Carrier Freight and Accessorial Charges)

35. Evans incorporates the above paragraphs as if set forth fully at length herein.

36. ITS engaged Evans to provide transportation services on behalf of itself and its customers to and from various locations throughout the United States.

37. Based on the representations ITS made to Evans, Evans and ITS did not have a formal, master agreement in place between them prior to May of 2023.

38. As a result, the transportation services Evans rendered were subject to the terms and conditions of Evans's governing tariff as well as the rates confirmations and applicable bills of lading.

39. Under the governing terms of transportation and as agreed to by and between the parties, ITS was obligated to pay the freight charges it owed to Evans for the services Evans rendered and would accrue late fees for failing to pay the charges in a timely fashion.

40. The freight and accessorial charges ITS owes to Evans for the transportation services Evans rendered exceed $75,000.00.

41. Evans performed its obligations under the governing terms of transportation for the services it rendered on behalf of ITS.

42. Evans has not received payment for the freight and accessorial charges it is owed for the services it rendered to ITS.

43. Despite Evan's demands, ITS has failed to pay the freight and accessorial charges due to Evans for the services Evans rendered.

44.     As a direct and proximate cause of ITS's failure to pay, Evans Delivery Company, Inc., is entitled to judgment in its favor and against the defendants, ITS Logistics, LLC and ITS National, LLC, in an amount in excess of $75,000.00 plus other related charges which may accrue, as well as interest, costs, attorneys' fees, expenses, and such other relief as the Court deems just.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract (in the Alternative)

45.     Evans incorporates each of the paragraphs above as if set forth fully at length herein.

46.     Evans agreed to provide the transportation services to ITS based on ITS's agreement to pay for those services including related accessorial charges such as per diem, chassis and detention charges.

47.     Pursuant to the parties' agreement, including Evans's governing tariff as well as the rates confirmations, applicable bills of lading and the Carrier-Broker Agreement executed in May of 2023, ITS was required to pay Evans for the services Evans rendered on behalf of ITS and ITS's customers including any freight and/or accessorial charges.

48.     Evans performed its obligations under the terms of the transportation and ensured that the shipments were transported from their origin to the required destination pursuant to ITS's request(s).

49.     Evans invoiced the freight and accessorial charges for the services Evans rendered to ITS at the agreed-upon rates.

50.     In breach of the parties' agreement, ITS failed to pay Evans for the outstanding freight and accessorial charges, and as a result, ITS's obligation to pay Evans has not been met.

51.     As a direct and proximate cause of ITS's breach of its obligation to pay Evans for the services Evans rendered, Evans incurred damages in excess of $75,000.00.

52.     The outstanding principal balance of the freight and accessorial charges ITS owes to Evans exceeds $75,000.00.

53.     As a direct and proximate result of ITS' conduct, Evans Delivery Company, Inc., is entitled to judgment in its favor and against the defendants, ITS Logistics, LLC and ITS National, LLC, in an amount in excess of $75,000.00 plus other related charges which may accrue, as well as

6

interest, costs, attorneys' fees, expenses, and such other relief as the Court deems just.

**THIRD CLAIM FOR RELIEF**
**(Account Stated (in the Alternative)**

54.    Evans incorporates each of the paragraphs above as if set forth fully at length herein.

55.    ITS purchased transportation services from Evans and agreed to pay for all such services.

56.    Pursuant to the parties' agreement, ITS was required to pay Evans for the services Evans rendered on behalf of ITS and ITS's customers including any freight and/or accessorial charges.

57.    Evans performed its obligations pursuant to the parties' agreement and ensured that the shipments were transported from their origin to the required destination according to ITS's request(s).

58.    Evans submitted written accounts to ITS accurately showing the debts owed by ITS for its purchases of Evans's services.

59.    Although Evans demanded payment for the balance due, ITS failed to make payment.

60.    ITS agreed to, assented, or acquiesced in the correctness of the account.

61.    ITS has not questioned or objected generally to the numerous accounts rendered.

62.    Instead, ITS promised to pay the outstanding balance, but has failed to do so in breach of the parties' agreement.

63.    As a direct and proximate cause of ITS's breach of its obligation to pay Evans for the services Evans rendered, Evans incurred damages in excess of $75,000.00.

64.    As a direct and proximate result of ITS' conduct, Evans Delivery Company, Inc., is entitled to judgment entered in its favor and against the defendants, ITS Logistics, LLC and ITS National, LLC, in an amount in excess of $75,000.00 plus other related charges which may accrue, as well as interest, costs, attorneys' fees, expenses, and such other relief as the Court deems just.

**FOURTH CLAIM FOR RELIEF**
**(Unjust Enrichment (in the Alternative)**

65.    Evans incorporates each of the paragraphs above as if set forth fully at length herein.

7

66. Evans conferred the benefit of its motor carrier transportation and services to ITS.

67. ITS received Evans's services for the transportation of the shipments ITS requested Evans transport and realized the use and enjoyment of the services as part of its ongoing business and relationship with its customers.

68. Evans reasonably expected to be paid for the services it provided to ITS for the services it rendered.

69. ITS knew or reasonably should have known that Evans expected to be paid for the services it provided to ITS.

70. The transportation services rendered by Evans have a reasonable value in excess of $75,000.00.

71. ITS has failed to pay Evans for the reasonable value of the services Evans rendered.

72. As a result, ITS has unjustly received the benefit of the services Evans provided without paying Evans for those benefits.

73. Allowing ITS to retain the benefit of the service Evans provided without paying Evans would be unjust.

74. As a direct and proximate result of ITS' retention of benefits to which it is not entitled, Evans Delivery Company, Inc., is entitled to judgment in its favor and against the defendants, ITS Logistics, LLC and ITS National, LLC, in an amount in excess of $75,000.00 plus other related charges which may accrue, as well as interest, costs, attorneys' fees, expenses, and such other relief as the Court deems just.

**FIFTH CLAIM FOR RELIEF**
**(Promissory Estoppel (in the Alternative)**

75. Evans incorporates each of the paragraphs above as if set forth fully at length herein.

76. Evans provided ITS with motor carrier transportation and services.

77. Evans reasonably relied upon the representations and unconditional promises of ITS to Evans's eventual detriment and Evans' reliance was expected by, and foreseeable to, ITS.

78. ITS failed to tender the promised compensation due and owing to Evans for the transportation services Evans provided.

79.    Evans has suffered damages in excess of $75,000.00 due to its reasonable reliance on the representations and unconditional promises of ITS.

WHEREFORE, the plaintiff, Evans Delivery Company, Inc., respectfully prays for the following relief:

1.    That judgment be entered in its favor and against the defendants, ITS Logistics, LLC and ITS National, LLC, in an amount in excess of $75,000.00;

2.    For equitable relief as set forth herein;

3.    For injunctive relief as appropriate;

4.    For cost and attorneys' fees in addition to other related charges which may accrue, as well as interest, and expenses; and

5.    For such other relief as the Court deems just.

Dated this 31st day of January, 2024.

THE GILMORE LAW GROUP, PLLC
3715 Lakeside Drive
Reno, Nevada 89509

And

COHEN & PALOMBO
The Times Building
32 Parking Plaza, Suite 402
Ardmore, Pennsylvania  19003

    /s/ Frank C. Gilmore
FRANK C. GILMORE
**ERIC C. PALOMBO** (*admitted pro hac vice*)
*Attorneys for Plaintiff*

9

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of THE GILMORE LAW GROUP, PLLC, and that on this date I caused to be served a true copy of **AMENDED COMPLAINT** on all parties to this action by the method(s) indicated below:

_____ by placing an original or true copy thereof in a sealed envelope, with sufficient postage affixed thereto, in the United States mail at Reno, Nevada, addressed to:

> Adam Hosmer-Henner, Esq.
> Katrina Weil, Esq.
> McDONALD CARANO LLP
> 100 West Liberty Street, Tenth Floor
> Reno, Nevada 89501

_X_ by using the Court's CM/ECF Electronic Notification System addressed to:

> Adam Hosmer-Henner, Esq
> Email:  ahosmerhenner@mcdonaldcarano.com
> Katrina Weil, Esq. (NSBN 16152)
> Email:  kweil@mcdonaldcarano.com

_____ by personal delivery/hand delivery addressed to:

DATED:  This 31st day of January, 2024.

_____/s/ Mary Carroll Davis_____
Employee of The Gilmore Law Group, PLLC

10